UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| PAUL G. CHIAROVANO, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos.: | 3:07-CR-31-TAV-CCS-1 |
| | ) | | 3:16-CV-450-TAV |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## **MEMORANDUM OPINION**

Before the Court is Petitioner's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 26]. Petitioner bases his request for relief on *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague [*Id.*]. The United States filed a response in opposition to relief on August 10, 2016 [Doc. 28]. On January 15, 2017, Federal Defender Services of Eastern Tennessee (FDSET) filed a reply to the United States response and supplement in support of the requested collateral relief [Doc. 31].[1] For the reasons that follow, Petitioner's § 2255 motion [Doc. 26] will be **GRANTED**; the Court will schedule a full resentencing hearing at the earliest date practicable.

### I. BACKGROUND

In 2007, Petitioner threatened to harm a woman and her son with a semi-automatic pistol [Presentence Investigation Report (PSR) ¶ 4]. He subsequently pled guilty to possessing ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1) [*Id.* ¶¶ 1–2]. Based on four prior

---

[1] On February 11, 2016, this Court appointed FDSET for the limited purpose of reviewing the case to determine whether or not Petitioner is eligible for collateral relief based the *Johnson* decision. E.D. Tenn. SO-16-02 (Feb. 11, 2016).

Ohio convictions for gross sexual imposition, the United States probation office deemed Petitioner to be an armed career criminal under § 924(e) [*Id.* ¶¶ 27, 29, 30]. The Court sentenced Petitioner to 192 months' imprisonment on April 17, 2008 [Doc. 20]. No direct appeal was taken and, as a result, Petitioner's conviction became final for purposes of § 2255(f)(1) on May 1, 2008, at expiration of the time to file the same. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (explaining that an unappealed judgment of conviction becomes final when the fourteen day period for a direct appeal has elapsed).

Eight years later—on June 9, 2016—Petitioner filed the instant collateral challenge, attacking the propriety of his armed career criminal designation in light of the *Johnson* decision [Doc. 26 (suggesting that the "predicates used in [his] case are . . . non-violent [in nature]")].

## II. TIMELINESS OF PETITION

Section 2255(f) places a one-year statute of limitations on all petitions for collateral relief under § 2255 running from either: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f). Supreme Court precedent makes clear that *Johnson*'s invalidation of the ACCA residual clause amounted to a new rule made retroactively applicable on collateral review. *See Welch v. United States*, 136 S. Ct. 1257, 1265

2

(U.S. 2016) ("*Johnson* is . . . a substantive decision and so has retroactive effect . . . in cases on collateral review."); *In re Windy Watkins*, 810 F.3d 375, 380–81 (6th Cir. 2015) (finding *Johnson* constitutes a new substantive rule of constitutional law made retroactively applicable on collateral review and thus triggers § 2255(h)(2)'s requirement for certification of a second or successive petition). Petitioner submitted the instant petition within subsection (f)(3)'s window.

## III. STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## IV. ANALYSIS

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (emphasis added). The provision defines "serious drug offense" as any "offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is

3

prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). The Act goes on to define "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). Only the third portion of the above definition—the residual clause—was held to be unconstitutionally vague by the Supreme Court in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did not call into question the remainder of the ACCA's definition of violent felony—the use-of-physical-force and enumerated-offense clauses. *Id.*; *United States v. Priddy*, 808 F.3d 676, 682–83 (6th Cir. 2015). Nor does *Johnson* disrupt the use of a defendant's prior serious drug offenses as an independent form of ACCA predicate conviction. *See, e.g.*, *United States v. Smith*, No. 10-CR-20058, 2015 WL 5729114, at *9–13 (E.D. Mich. Sept. 20, 2015) (noting that *Johnson* does not affect a defendant's categorization as an armed career criminal based on his or her prior serious drug offenses).

The validity of Petitioner's sentence thus depends on whether three or more of his prior convictions qualify "violent felonies" under one of the unaffected provisions of § 924(e)(2)(B). *See e.g.*, *United States v. Ozier*, 796 F.3d 597, 604 (6th Cir. 2015) (denying petition where conviction qualified as a predicate offense independent of the residual clause), *overruled on other grounds by Mathis v. United States*, 136 S. Ct. 2243, 2251 n. 1 (2016).

4

At the time that Petitioner committed the offenses, Ohio defined gross sexual imposition as follows:

> No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.
>
> (2) For the purpose of preventing resistance, the offender substantially impairs the judgment or control of the other person or of the other persons by administering any drug or intoxicant to the other person, surreptitiously or by force, threat of force, or deception.
>
> (3) The offender knows that the judgment or control of the other person or of one of the other persons is substantially impaired as a result of the influence of any drug or intoxicant administered to the other person with his consent for the purpose of any kind of medical or dental examination, treatment, or surgery.
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
>
> (5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other person is substantially impaired because of a mental or physical condition or because of advanced age.

Ohio Rev. Code Ann. § 2907.05(a) (1996).[2] Ohio defined "force" as "any violence, compulsion, or constraint physically exerted by any means upon or again a person or thing," Ohio Rev. Code Ann. § 2901.01(A)(1) (1996), and categorized violations of § 2907.05(a)(1), (2), (3), and (5) as felonies of the fourth degree and violations of § 2907.05(a)(4) as felonies of the third degree,

---

[2] Relevant provisions of the statute remained unchanged between the time of Petitioner's first gross sexual imposition conviction in 1994 and final gross sexual imposition conviction in 1996. *Compare* Ohio Rev. Code Ann. § 2907.05(a)(1) (1994), and Ohio Rev. Code Ann. § 2929.14(A) (1994), *with* Ohio Rev. Code Ann. § 2907.05(a)(1) (1996), and Ohio Rev. Code Ann. § 2929.14(A) (1996).

5

Ohio Rev. Code Ann. § 2907.05(c). Violations of the former were punishable by a term of six-to-eighteen months' incarceration, while violations of the latter are punishable by an enhanced term of twelve-to-sixty months' imprisonment.

To determine whether Petitioner's offenses were properly categorized as predicate violent felonies under § 924(e), the Court needs to identify the precise crimes of conviction. *Descamps*, 133 S. Ct. 2276, 2285 (2013).[3] To do so, the Court employs a "categorical approach," under which it looks "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283 (internal quotations omitted). If violation of the statute invariably involves the use, attempted use, or threatened use of violent force or falls within the generic definitions of burglary, arson, or extortion, then the conviction categorically qualifies as a violent felony and the courts' task is complete. It is only when the statute criminalizes conduct in excess of that covered by the use-of-physical-force and enumerated-offense clauses, that the Court must determine whether the statute is divisible or indivisible. A divisible statute is one that comprises multiple crimes, i.e., alternative sets of elements. *Id.* at 2281. An indivisible statute is one that contains a single crime, i.e., lone set of indivisible elements. *Mathis*, 136 S. Ct. at 2249. When faced with a divisible statute, the Court resorts to the "modified categorical approach," i.e., consults "a limited

---

[3] The Supreme Court clarified in *Descamps* how sentencing courts should identify a defendant's offense when the prior conviction involved the violation of a "divisible" statute—one which "comprises multiple, alternative versions of the same crime." 133 S. Ct. at 2284. Specifically, the Court explained that the sentencing court should employ a "modified categorical approach" and "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281. The decision made clear that "the job . . . of the modified approach [was only] to identify, from among several alternatives, the crime of conviction so that the court can" determine whether that variant of the offense qualified as a violent felony under the ACCA's definition of violent felony. *Id.* at 2285.

6

Case 3:07-cr-00031-TAV-CCS   Document 32   Filed 01/25/17   Page 6 of 12   PageID #: 71

class of documents, such as indictments and jury instructions, to determine which alternative [set of elements] formed the basis of the defendant's prior conviction." *Id.* at 2281. Because the categorical and modified approaches are concerned with elements alone and not the "facts underlying [any particular] conviction," *Id.* at 2285, the Court is prohibited from using either approach to distinguish between alternative means for satisfying a single indivisible element, *Mathis*, 136 S. Ct. at 2253–54. Thus, it is important to distinguish between divisible provisions to which the modified approach can be applied and indivisible provisions to which it cannot.

To determine whether a statutory list of locations constitutes alternative elements or alternative means of satisfying a single indivisible crime, the Court must consider: (1) the text of the statute; (2) any state court decisions interpreting that statute; and (3) where "state law fails to provide clear answers, . . . the record of a prior conviction," i.e., charging documents and jury instructions, for the "limited purpose" of distinguishing between means and elements. *Id.* at 2256–57. With regard to the third factor, the Supreme Court has provided the following:

> Suppose, for example, that one count of an indictment and correlative jury instructions . . . use a single umbrella term like "premises" . . . the record would then reveal what the prosecutor has to (and does not have to) demonstrate to prevail. Conversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statue contains a list of elements, each one of which goes toward a separate crime.

*Id.* at 2257. Applying this analysis to Ohio's gross sexual imposition statute leads the Court to conclude that the provision is overly broad because some violations of the provision neither involve the use, attempted use, or threatened use of force as required by § 924(e)(2)(B)(i) nor fall within one of the enumerated categories listed in § 924(e)(2)(B)(ii). As such, this Court's ability to rely on Petitioner's gross sexual imposition convictions as predicate violent felonies under § 924(e) depends on whether the statute is divisible or indivisible. *See United States v. Alexander*,

7

642 F. App'x 506 (6th Cir. 2016), *vacated and remanded by Alexander v. United States*, No. 15-9838, 2016 WL 3410140 (U.S. Oct. 11, 2016) (vacating holding that Ohio's gross sexual imposition statute is divisible for reconsideration in light of the intervening *Mathis* decision).[4]

Unlike the Iowa statute held to be indivisible in *Mathis*, Ohio categorizes violations of § 2907.05(a)(4) as felonies of the third degree and violations § 2907.05(a)(1), (2), (3), and (5) as felonies of the fourth degree. *Cf.* 136 S. Ct. at 2251 (concluding the Iowa statue was indivisible in part because the Iowa Supreme Court held that the list of locations served as "'alternative method[s] of committing [the] single crime' of burglary" so that the jury need not agree on which of the locations was actually involved (quoting *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981))). Further, Ohio requires that charging documents "state the degree of the offense" charged and verdicts identify the degree of the conviction. Ohio Rev. Code Ann. § 2945.75(A).

While the foregoing weighs strongly in favor of finding that § 2907.05(a) contains five distinct crimes, *id.* at 2256 (explaining that where "statutory alternatives carry different punishments, . . . they must be elements" (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000))), reference to the Ohio jury instruction for the offense forecloses any doubt. After identifying time and place of the offense, the relevant instruction provides for the insertion of either § 2907.05(1),

---

[4] In *Mathis*, the Supreme Court held that: (1) a prior conviction does not qualify as a generic form of a predicate violent felony for purposes of the ACCA if an element of the crime of conviction is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfaction of the former; and (2) Iowa's burglary statute—which defines "structure" to include any building, structure, [or] land, water, or air vehicle"—had a broader locational component than generic burglary. 136 S. Ct. 2247–48, 53–54. Because the "structure" element of Iowa's burglary statute was broader than the parallel element of generic burglary, the Court concluded that the petitioner's prior convictions were incapable of supporting enhancement under the enumerated offense clause. *Id.* at 2257.

(2), (3), (4), or (5) as appropriate. *See generally* Ohio Jury Instruction 507.05 (1996).[5] The fact that Ohio requires that jurors agree on the type of gross sexual imposition prior to rendering a guilty verdict is proof that § 2907.05(a) contains a list of independent elements, satisfaction of which equate to the commission of alternative versions of the crime. The statute is divisible and the modified categorical approach can be used to determine whether the variants for which Petitioner was held responsible qualify as violent felonies independent of the residual clause.

The United States argues that Petitioner's indictments and judgments establish that at least three of his four prior convictions for gross sexual imposition involved violations of § 2907.05(a)(1) [Doc. 28 pp. 4–5], but this Court's independent review of those documents does not reveal that to be the case. While the Court agrees that the indictment in the 1994 case suggests that the offense may have involved violation of § 2907.05(a)(1)—purposefully compelling one or more other people to submit to sexual contact by force or threat of force [Doc. 28-1 (charging Petitioner with "compel[ing]" his victim to submit to sexual contact "by force or threat of force" and noting that Petitioner actually "cause[d] physical harm" to the victim)], records suggests that both the 1996 convictions were for violations of § 2907.05(a)(4)—sexual contact with a person under thirteen years of age [Doc. 28-3 (reflecting conviction for one count of gross sexual imposition of the third degree, a violation of § 2907.05(a)(4)); Doc. 28-4 (charging Petitioner with two counts of "compell[ing]" his victim to submit to sexual contact "by force or threat of force" and noting that the victim was "less than thirteen years of age"); Doc.

---

[5] Again, relevant portions of the provision went unchanged between the time of Petitioner's first gross sexual imposition conviction in 1994 and final gross sexual imposition conviction in 1996. *Compare* Ohio Jury instruction 507.05 (1994), *with* Ohio Jury Instruction 507.05 (1996).

9

28-5 (reflecting conviction for two counts of gross sexual imposition of the third degree, both violations of § 2907.05(a)(4))].

While the indictment for Petitioner's first 1996 offense charged him with compelling sexual contact by force or threatened force—a felony of the fourth degree [Doc. 28-2], the judgment associated with that case indicates that Petitioner was convicted of gross sexual imposition of the third degree—sexual contact with a person under thirteen years of age [Doc. 28-3]. Similarly, while the indictment for Petitioner's second and third 1996 offenses charged him with compelling sexual contact by force or threatened force and sexual contact with an individual under thirteen years of age [Doc. 28-4], the judgment associated with those offenses indicates that he was again convicted of gross sexual imposition of the third degree [Doc. 28-5].

Whether or not the conduct underlying Petitioner's conviction for gross sexual imposition of the third degree—§ 2907.05(a)(4)—also involved conduct sufficient to support a conviction for gross sexual imposition of the fourth degree—§ 2907.05(a)(1)—is irrelevant for purposes of the modified categorical approach because the modified categorical approach is concerned only with the "crime of conviction." Here, the judgments associated with Petitioner's 1996 offenses indicate that all the convictions were for violations of § 2907.05(a)(4), not § 2907.05(a)(1).

Unlike violations of § 2907.05(a)(1), which categorically require the use or threatened use of force, violations of § 2907.05(a)(4) occur whenever a defendant makes intentional "sexual contact" with an individual less than thirteen years of age. At the time that Petitioner violated § 2907.05(a)(4), Ohio defined "sexual contact" as "touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Ohio Rev. Code Ann. § 2907.01(B) (1996). Because the offense is capable of commission by way of de

minimis force, it does not qualify under the ACCA's use-of-physical-force clause. *Cf. Johnson v. United States*, 559 U.S. 133, 140 (2010) (explaining that "physical force" means "violent force—that is, force capable of causing physical pain or injury to another person"). The ACCA enumerated-offense clause is similarly inapplicable under the circumstances.

Because Petitioner's 1996 gross sexual imposition convictions qualified as violent felonies under the ACCA's residual clause alone, *see, e.g.*, *United States v. Arnold*, No. 2:97-cv-99-1, 2014 WL 6982678, at *3 (S.D. Ohio Dec. 9, 2014) (finding that violations of § 2907.05(a)(4) do invariably require the use of physical force and, as a result, qualify as crimes of violence under the Guidelines residual clause), the *Johnson* decision dictates that those offenses can no longer be used to designate Petitioner an armed career criminal. As a result, Petitioner's 192 month term of imprisonment and 5 years' supervised release [Doc. 20] exceed his maximum authorized sentence as a non-ACCA offender under § 922(g)(1) by 72 months' incarceration and 2 years' supervised release. *See* 18 U.S.C. § 924(a)(2) ("Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be . . . imprisoned not more than [ten] years."). Accordingly, this Court finds that Petitioner has demonstrated a clear entitlement to relief.

Where a § 2255 claim has merit, district courts have the discretion to choose between discharging the petitioner, resentencing the petitioner, correcting the petitioner's sentence, or granting the petitioner a new trial. 28 U.S.C. § 2255(b). Absent ACCA enhancement, Petitioner's Guideline range would have been lower and his term of incarceration restricted by § 924(a)(2)'s ten-year statutory maximum [PSR ¶¶ 58, 59]. Because Petitioner has not yet served in excess of the statutory maximum applicable to him as a non-ACCA offender, this Court finds resentencing to be the most appropriate form of relief. *United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000) ("[I]n cases were the sentence (but not the conviction) is infirm, only the

'resentenc[ing]' or 'correct[ing] the sentence' options are open to the district court, since a prisoner should never be 'discharge[d]' or 'grant[ed] a new trial' based solely on a defective sentence.").

## V. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 petition [Docs. 26] will be **GRANTED**. The sentence dated April 17, 2008 [Doc. 20] will be **VACATED**; resentencing will be scheduled as soon as reasonably practicable.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan<br>
CHIEF UNITED STATES DISTRICT JUDGE